NO. 29930

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

Electronically Filed
Intermediate Court of Appeals
29930
28-OCT-2010
09:18 AM

GABRIEL APILANDO, Petitioner-Appellee, v.
STATE OF HAWAI'I, Respondent-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(S.P.P. NO. 08-1-0006; CR. NOS. 01-1-0424 & 01-1-0098)

MEMORANDUM OPINION
(By:  Nakamura, C.J., Foley and Leonard, JJ.)

Respondent-Appellant, the State of Hawai'i (**State**)
appeals from the Findings of Fact, Conclusions of Law, and Order
Granting Defendant's Petition for Post-Conviction Relief (**Order
Granting Post-Conviction Relief**), filed on June 9, 2009, in the
Circuit Court of the First Circuit (**Circuit Court**).[1/]

I.   BACKGROUND

On January 16, 2001, Petitioner-Appellee Gabriel
Apilando (**Apilando**), along with three other co-defendants, was
charged with Robbery in the First Degree, in violation of Hawai'i
Revised Statutes (**HRS**) § 708-840 in Cr. No. 01-1-0098.  On
February 21, 2001, Apilando was charged with Accomplice to
Attempted Escape in the First Degree, in violation of HRS §§ 702-
221(2)(c), 702-222(1)(b), 705-500, and 710-1020, in Cr. No. 01-1-
0424.

On March 15, 2004, Apilando appeared before the Circuit
Court for a change of plea hearing in both cases.  During the
hearing, the following exchange occurred:

> The Court:  Under both change of plea forms on the
> second page there appears to be a signature Gabriel
> Apilando.  Did you sign those documents today?
>
> [Apilando]  A.    Yes.

---

[1/]    The Honorable Derrick H.M. Chan presided.

Q.    Before you signed those document did you have an opportunity to go over both forms with your lawyer and was he able to answer any questions you had?

A.    Yes, he did.

        . . . .

Q.    You understand you're here to in 01-1-0424 to plead to one count accomplice to escape which has a maximum penalty of five years in jail and a fine up to $10,000.

A.    Yes.

Q.    Also under Criminal 01-1-0098 you're going to plead to the offense of robbery in the first degree which carries a maximum penalty of 20 years in jail and a fine up to $25,000.

        You understand that under the law that term of imprisonment could be extended to life with the possibility of parole.

        Knowing the possible maximum punishment that you face, do you still want to change your pleas in these cases?

A.    Yes.

        . . . .

Q.    You understand that by changing of your plea to these offenses you give up all those rights and I will sentence you without a trial of any kind and you cannot come back later and say now you want a trial?

A.    Yes.

        . . . .

Q.    Okay, the record should reflect Mr. Apilando that I have discussed these matters with your counsel and I understand that there's a concern was whether or not the sentences would be run consecutively or any other time be imposed upon you.  I shared with your attorney that it is my responsibility to make sure that both parties prosecution and the State on equal steps when they reach an agreement of any sort.  And, more significantly, I shared with the attorneys that this court gives credit to the individuals who own up to their own actions, okay, and I told your attorney that I would run these sentences concurrently or run at the same time, okay.

A.    Yeah.

2

Q.      Now other than that, were any other promises
        made to you in exchange for your pleas today?

[Defense Counsel]:  May I at this point interject
        although it's not part of the plea agreement robbery,
        we have an understanding with the prosecution that the
        prosecution will write a letter to the parole board in
        regards to recommendation of one year as far as
        minimum term in light of the fact that Mr. Apilando
        has done very well on supervised release in the sense
        that he has taken over the family appliance business,
        he's reconciling with his wife, he had a falling out
        with when he got into drugs, which led to these cases.
        He went to My Brother's Keeper and he has a full
        clinical discharge from Doctor Jerry Brannon and he
        had excellent standing with ISC counselor Franklin
        Young.  In light of all this there is a one year
        recommendation.

[Deputy Prosecutor Wada]:  That's Correct.  I also
checked with the police and the defendant did work
with the police on a number of cases.  With that
consideration, Mr. Choy's representations are correct.

The Court:  Okay, thank you.

Q:      Now, other than what the court had stated, what
        your attorney just stated and the prosecutor
        confirmed, were there any other promises made to
        you in exchange for your pleas today?

A.      Not that I know of.

On September 30, 2004, the Circuit Court held a sentencing hearing for both cases.  Apilando was sentenced to a twenty-year term of imprisonment for Robbery in the First Degree and, initially, he was sentenced to a five-year term for Accomplice to Attempted Escape in the First Degree, with the terms to be served concurrently.  Later that same day, after the parties discovered that the sentence for Attempted Escape in the First Degree was incorrect,[2/] and after Apilando further consulted with his counsel, Apilando appeared again before the Circuit Court:

---

[2/]      Pursuant to HRS § 710-1020, Escape in the First Degree is a class B felony.  Upon a court's decision to sentence a class B felon to imprisonment, the person is sentenced by the court to the maximum ten-year term, with the minimum length of imprisonment to be determined by the Hawai'i paroling authority.  See HRS § 706-660.

The Court: Okay, the record should reflect the presence of counsel. Mr. Choy, are you ready to proceed?

Mr. Choy: Yes, Your Honor.

The Court: The record should reflect that the previously entered plea under Criminal 4-1-0424 is hereby withdrawn. Can you state your full name for the record, Mr. Apilando.

. . . .

The Court: Has any deals or promises been made to you in exchange for your change of plea today?

The Defendant: Yes.

The Court: Other than the fact that I already shared with you that I will run the sentence concurrent?

The Defendant: Yes.

The Court: Is there anything else?

The Defendant: The Prosecution promised to recommend to the Parole Board a one-year minimum.

The Court: And that this part of - -

Mr. Choy: That was stated on the record at the original change of plea.

The Court: I do recall that. Was there anything else, Mr. Apilando? In other words, was there anything not on the record?

The Defendant: No, that's it.

The Circuit Court then accepted Apilando's guilty plea for Accomplice to Attempted Escape in the First Degree and sentenced him to a ten-year maximum term of imprisonment on that charge.

Eight days later, on October 8, 2004, the Parole Board held a hearing to set Apilando's minimum term. The Parole Board did not have a letter from Deputy Prosecutor Wada recommending a one-year minimum. However, Apilando's attorney read aloud the transcript of Deputy Prosecutor Wada's confirmation of that recommendation at the change of plea hearing and fully apprised the Parole Board of the State's agreement. The State's one-year

recommendation was referenced several times by Apilando's attorney and was central to his argument for a one-year minimum. No concern was raised about the fact that an actual letter had not been received by the Parole Board.

On October 15, 2004, Apilando's minimum term of imprisonment was fixed at one year and six months, below the two-to five-year range – the lowest range – set forth in the guidelines established by the Hawaii Paroling Authority for a person sentenced to a maximum twenty-year term. On November 26, 2004, more than a month after Apilando's minimum term was set, Deputy Prosecutor Uehara submitted a letter to the Parole Board recommending a ten-year minimum term.

Apilando did not appeal from the judgment, conviction and sentence in either criminal case. He was released on parole in April of 2005, after serving his minimum sentence.

On December 5, 2007, Apilando's parole was revoked due to violations of the terms and conditions of his parole.

On December 12, 2007, Apilando wrote to the Circuit Court, wanting to appeal his robbery conviction. The court designated Apilando's correspondence as a non-conforming petition for post-conviction relief pursuant to Hawai'i Rules of Penal Procedure (**HRPP**) Rule 40. The petition was later amended to include the Accomplice to Escape in the First Degree conviction. Relief was denied as to all grounds, except Ground Two, which stated:

> Plea agreement unlawfully induced. Plea agreement breached, Counsel Choy made agreement of protection with prosecution (see Exhibit A) as agreed to.

The Circuit Court construed this ground as alleging, *inter alia*, that the prosecution breached a plea agreement, which resulted in an unlawful inducement of Apilando's guilty pleas.

Rule 40 counsel was appointed for Apilando and the Circuit Court held an evidentiary hearing. The Circuit Court heard testimony from Apilando and Apilando's trial counsel, and

reviewed the parole hearing tapes. At a further hearing, the Circuit Court ruled that the State did not fulfill the promise that served as an inducement for Apilando's change of plea, that there was a manifest injustice as a matter of law, and that the only suitable relief would be to allow Apilando to withdraw his guilty pleas in both criminal cases. For these reasons, the Circuit Court granted in part the Rule 40 petition.

The Order Granting Post-Conviction Relief was entered on June 9, 2009; it provided:

### FINDINGS OF FACT

1. The Defendant entered a guilty plea on March 15, 2004 in CR. No. 01-1-0098 and 01-1-0424.

2. In exchange for the Defendant's guilty plea, Deputy Prosecuting Attorney Lori Wada made a promise to the Defendant to submit a written letter to the Hawaii Paroling Authority recommending a one-year minimum term of imprisonment.

3. Deputy Prosecuting Attorney (DPA) Wada's promise served as an inducement for the Defendant's guilty pleas in both cases.

4. The Hawaii Paroling Authority (the "parole board") did not receive DPA Wada's recommendation letter.

5. At the Defendant's parole minimum hearing, Defense counsel for the Defendant, Glenn Choy, mentioned the recommendation letter to the parole board and he also read transcripts from the change of plea hearing where DPA Wada agreed to submit the letter.

6. At the end of the Defendant's parole minimum hearing, the parole board mentioned that it would "discuss DPA Wada'a recommendations to the court."

7. The parole board did not indicate whether Defense counsel, Glenn Choy's presentation of the transcript was sufficient to represent DPA Wada's recommendation, or that the parole board would strongly consider Mr. Choy's representations of DPA Wada's promise.

8. Even though DPA Wada had promised a written letter recommending a one-year minimum term to the parole board, DPA Russ Uehara submitted a letter recommending a 10-year minimum term.

9.   In the absence of DPA Wada's recommendation letter, any argument that the parole board considered DPA Wada's recommendation for a one-year minimum term is speculation.

10.   Based on the foregoing facts, it appears there was a violation of due process in this case.

11.   The State of Hawaii did not fulfill its promise in the plea agreement which served as the inducement the Defendant's guilty pleas.

CONCLUSIONS OF LAW

1.   The Court finds that there was manifest injustice in this case as a matter of law.

2.   The Court finds that the Defendant is entitled to withdraw his guilty pleas in both cases.

The State timely filed a notice of appeal.

II.   POINTS OF ERROR RAISED ON APPEAL

On appeal, the State raises seven points of error, challenging the Circuit Court's Findings of Fact (**FOFs**) 7, 8, 9, 10, and 11, and Conclusions of Law (**COLs**) 1 and 2.

III.   STANDARD OF REVIEW

The disposition of an HRPP Rule 40 petition is based on findings of fact, which are reviewed under the clearly erroneous standard, and conclusions of law, which are reviewed de novo. Coulter v. State, 116 Hawaiʻi 181, 184, 172 P.3d 493, 496 (2007).

A plea agreement implicates constitutional considerations, including the fairness and voluntariness of the plea. We answer questions of constitutional law by exercising our independent judgment based on the facts of a case. See, e.g., State v. Prendergast, 103 Hawaiʻi 451, 453, 83 P.3d 714, 716 (2004).

IV.   DISCUSSION

The issue, as presented by the State on this appeal, is whether the Circuit Court erred in concluding that Apilando was entitled to withdraw his guilty pleas, post-sentencing, due to a technical violation of his plea agreement with the State, where he received the benefit of the plea agreement and then waited

over four years before bringing the technical violation to the court's attention.

First, we address the challenged FOFs. We cannot conclude that FOFs 7, 8, or 11 are clearly erroneous. There appears to be substantial evidence in the record to support these findings. However, we conclude that FOF 9 is not supported by the record in this case and is, therefore, clearly erroneous. There is ample evidence in the record that the Parole Board considered Deputy Prosecutor Wada's recommendation. Defense counsel specifically mentioned it several times at the Parole Board hearing. He presented the written transcript of the Circuit Court hearing in which Wada stated her recommendation. The Parole Board acknowledged the recommendation when it stated on the record that it would consider Wada's suggestion to the court. And, most compelling perhaps, the Parole Board set a minimum sentence below the lowest minimum sentence established under the Hawaii Paroling Authority Guidelines for Establishing Minimum Terms of Imprisonment. FOF 10 is a conclusion of law and, therefore, will be reviewed accordingly.

We next consider whether the Circuit Court's conclusions of law are right or wrong, i.e., whether Apilando's due process rights were violated (FOF 10), whether there was manifest injustice in this case (COL 1), and whether Apilando, as a result of due process violations and manifest injustice, is entitled to withdraw his guilty pleas (COL 2).

In State v. Adams, the Hawai'i Supreme Court held that "where a defendant is denied due process because the prosecution violates a plea agreement, 'there is manifest injustice as a matter of law,' and the defendant is entitled to withdraw his guilty plea." Adams, 76 Hawai'i 408, 414, 879 P.2d 513, 519 (1994) (citations omitted). In Adams, after agreeing to stand silent at sentencing and to not oppose defendant's deferral request, at sentencing the State made reference to its lengthy

8

presentence investigation report, saying, "I think the presentence report pretty much sets forth the position of the State." Id. at 409-10, 879 P.2d at 514-15. The supreme court concluded that the State was attempting "to accomplish indirectly what it had promised not to do directly." Id. at 413, 879 P.2d at 518. Under those circumstances, the supreme court held that the State breached its plea agreement. Id. In fashioning the remedy, the court held that the defendant's choice is given considerable weight, but that factors including "the timeliness of the motion, the extent of the breach, the prejudice to the parties, and which alternative will best serve the effective administration of justice" should be considered. Id. at 414-15, 879 P.2d at 519-20.

Apilando also relies on State v. Miller, 122 Hawai'i 92, 223 P.3d 157 (2010). However, in Miller, much like in Adams, the prosecution made comments at the sentencing hearing that the supreme court found "directly violated" the prosecution's agreement to take no position on the deferral motion. Id. at 105, 223 P.3d at 170. In addition, the Miller court concluded that the State was "attempting to influence the court's decision as to whether to grant the DANCP plea after explicitly promising not to do so." Id. at 106, 223 P.3d at 171. Finally, the supreme court concluded that the error was not harmless because the court appeared to rely particularly on the comments offered by the prosecutor. Id. Miller's sentence was vacated and the case was remanded for resentencing before a different judge. Id. at 133, 223 P.3d at 198.

The case at bar is, however, clearly distinguishable from Adams, Miller, and the other cases cited by Apilando. In this case, while there was arguably a technical breach inasmuch as the Parole Board did not have an actual letter from Deputy Prosecutor Wada when Apilando's minimum term was set, the Parole Board clearly had before it and understood the State's

9

recommendation of a one-year minimum term.  Contrary to the cited cases, at the time of the Parole Board's decision, there was no statement or action by the State to attempt to influence the Parole Board in a way that was inconsistent with the plea agreement.[3/]  Indeed, the only reasonable explanation for the Parole Board's setting of a minimum term less than the lowest minimum in the Hawaii Paroling Authority Guidelines is that the Parole Board was favorably influenced by the State's recommendation of a one-year minimum term.

For these reasons, we conclude that Apilando received the benefit of the bargain that he struck with the State and that, under the unique circumstance of this case, any breach of the plea agreement was not material and, therefore, did not negatively impact Apilando's due process rights or create a manifest injustice.

Even assuming, arguendo, that the State materially breached the plea agreement by failing to deliver its recommendation in writing, based on the factors articulated by the supreme court in Adams, allowing Apilando to withdraw his guilty pleas was not an appropriate remedy.  While that was Apilando's preferred remedy, which must be given considerable weight, the other factors in this case are compelling.

As his counsel acknowledged, Apilando received a very favorable minimum term of imprisonment.  He did not write to the court seeking relief from his guilty pleas until more than three years later, after having served the balance of his minimum, being paroled, and having his parole revoked for multiple

---

[3/]     The transmission of Deputy Prosecutor Uehara's later letter was at best inept, and at worst troubling.  Nevertheless, given its timing, it was impossible that Uehara's letter had any influence whatsoever on Apilando's minimum term of imprisonment.  Thus, it did not impinge on Apilando's due process rights or create a manifest injustice in the way that the prosecutor's actions did in Adams and Miller.  At oral argument, defense counsel agreed that there was no indication that Uehara's letter reflected anything other than a failure of communication in the prosecutor's office.  Nevertheless, had the letter been received by the Parol Board prior to the setting of Apilando's minimum term, it would have materially changed the circumstances of this case.

violations of the conditions of his parole.  His motion was not timely.  The extent of any breach was minimal and appears to have had no impact on his minimum sentence.  Thus, he suffered no prejudice.  As the underlying offenses occurred on December 24, 2000, and February 7, 2001, it appears that the State would be substantially prejudiced by faded memories and destroyed evidence.  As there was no complaint raised concerning the lack of a letter, the State was never given an opportunity to investigate or correct the situation by submitting the letter. It does not "best serve the effective administration of justice" to allow Apilando to withdraw his pleas at this late date.  See Adams, 76 Hawai'i at 414-15, 879 P.2d at 519-20.  It appears that specific performance and a new minimum sentencing hearing would be futile.  Thus, no remedial action was warranted in this case.

For these reasons, the Circuit Court's June 9, 2009 Order Granting Defendant's Petition for Post-Conviction Relief is vacated and this case is remanded to the Circuit Court so that the judgment and sentence in the underlying cases can be reinstated.

DATED:  Honolulu, Hawai'i, October 28, 2010.

Delanie D. Prescott-Tate
for Respondent-Appellant

Jeffrey A. Hawk
for Petitioner-Appellee

Chief Judge

Associate Judge

Associate Judge

11